BLAIR, Justice.
When this cause came before me, at Exeter, in New Hampshire, I felt myself in a delicate situation, in having a cause of such magnitude, and at the same time, of such novelty and difficulty, as to have drawn the judgment of men of eminence, different ways, brought before me for my single decision. It was, however, a consolation to know, that whatever that decision might be, it was not intended to be final, and I can truly say, it will give me pleasure to have any errors I may have committed, corrected in this court. Two points, and if I mistake not, only two, were brought before me: The first, whether under the description of Admiralty and Maritime jurisdiction, the judiciary bill gave to the District Court any jurisdiction concerning prizes, I decided in the affirmative; and the same decision having been afterwards made in this court, in the case of Glasse, and others, I consider that as now settled. The other point, was, whether the Court of Appeals, erected by Congress, had authority to reverse the sentences given in the Courts of Admiralty of the several States; and the source of the objection upon this point, was the defect of authority in the Congress itself. Here, also, my sentence affirmed the jurisdiction.
I have attended as diligently, and as impartially as I could *109 to the arguments of the gentlemen, upon the present occasion, to discover, if possible, how I may have been led astray, in the decision of this question ; but as the impressions which my mind first received, continue uneffaced, (whether through the force of truth, or from the difficulty of changing opinions, once deliberately formed) I will repeat here the opinion which I delivered in the Circuit Court, as the best method I can take for explaining the reasons upon which it was founded. I would premise, however, that it contains something relative to what had been said at the bar of the Circuit Court, but which I believe was not mentioned on this occasion.
“ The immediate question is, whether Congress had a right to exercise, by themselves, by their committees, or. by any regular court of Appeals by them erected, an appellate jurisdiction, to affirm or reverse a sentence of a State court of Admiralty, in a question whether prize or no prize. If they possessed such an authority, it must be derivative, and its source either mediately or immediately the will of the people; usurpation can give no right. The respondents contend they had no such authority, till the completion of the Confederation in 1781, but only a recommendatory power; the Libellants insist, that Congress was considered as the sovereign power of war and peace, respecting Great-Britain, and that to that power is necessarily incident that of carrying on war in a regular way, of raising armies, making regulations for their discipline and government, commissioning officers, equipping fleets, granting letters of marque and reprisal, the power (now contested) of deciding, in all cases of capture, questions whether prize or not, and every power necessarily incident to a State of war. It is, at least, certain, that the political situation of the American Colonies, required a union of council and of force, by wise measures to bring about, if possible, a reconciliation with the mother-country, on a basis of freedom and security, or, if this should fail, by vigorous measures to defeat the designs of their tyrannical invaders ; and although this alone cannot suffice for an investiture in Congress, of the powers necessary to that end, yet if the powers given be delegated in terms large enough to comprehend this extent of authority, but which may also be satisfied by a more limited construction, the supposed neccessity for such powers given to a federal head (and the counsel for the respondents have admitted that it would have been good policy) is no contemptible argument for supposing it actually given. In the beginning of the year 1775, our affairs were drawing fall to a crisis, and for some time before the battle or Lexington, a State of warfare must in the minds of all men have been an expected event. Some of the delagations (I think three) of members to the Congress which met in May of that year, *110 contain nothing, but simple powers to meet Congress; the rest expressly give authority to their delagates to consent to all such further measures, as they and the said Congress shall think necessary, for obtaining a redress of American grievances, and a security of their rights. It is not in all of them worded alike, but in substance, that seems to be the sense. Every thing which maybe seemed necessary ! I think it cannot well be supposed, that in such a delegation of authority, at such a time, there was not an eye to war, if that should become necessary. But it is objected, that at most, no greater power was given to Congress than to enter into a definitive war with Great-Britain, not the right of war and peace generally; and even that war, till the declaration of independence, would be only a civil war. But why is not a definitive war against Great-Britain (call it if you will a civil war) to be conducted on the same principles as any other : If it was a civil war, still we do not allow it to have been a rebellion—America resisted and became thereby engaged in what the deemed a just war. It was not the war of a lawless banditti, but of freemen fighting for their dearest rights, and of men lovers of order and good government. Was it not as necessary in such a war as in any between contending nations, that the law of nations should be observed, and that those who had the conducting of it, should be armed with every authority for preventing injuries to neutral powers, and their subjects, and even cruelty to the enemy ? The power supposed to have been given to Congress, being confined to a definitive war against Great-Britain, and not extending to the rights of peace and war generally, appears to me to make no material difference; still the same necessity recurs, of confining the evil of the war to the enemy against whom it is waged. Till a formal declaration of independence the people of the Colonies are said to have continued subjects to Great-Britain ; true, and that circumstance it is, which denominates the war a civil war, as to which I have already Stated how, in ray mind, the question is affected by that circumstance. But it was asked whether, if during the war, Great-Britain, at any time before the declaration of independence, had declared war against any nation of Europe, that nation would not have had a right to treat America with hostility as being subject to Great-Britain ? According to this supposition, Great-Britain might have had some temptation to declare such war that she might have the cooperation of her enemy, to reduce her colonies to obedience. But Great-Britain was too wise to adopt such a policy; she knew that by her engaging in such a war, the colonies, instead of finding a new enemy to oppose, would have known where to find a friend ; they might have formed an alliance with such a power, who probably would have considered it as an acquisi *111 tion, and Congress might have been the sooner encouraged to separate from Great-Britain, by a formal declaration of independence. As the supposition that Congress was invested with all the rights of war, in respect to Great-Britain, is of great moment in the present cause, and as the power may not be so satisfactorily conveyed by the instructions to the several delegates as might be wished, partly because some of them did not exhibit farther instructions than to attend Congress, and partly because the instructions given to the rest, may be satisfied by a different construction, it may be proper to consider the manner in which Congress, by their proceedings, appear to have considered their powers; not that by any thing of this sort, they had a right to extend their authority to the defined point, if it was not given, but because in shewing by such means, their sense of the extent of their power, they gave an opportunity to their constituents to express their disapprobation, if they conceived Congress to have usurped power, or by their co-operation to confirm the construction of Congress; which would be as legitimate a source of authority, as if it had been given at first. If they were only a mere council, to unite by their advice and recommendation all the States in the same common measures (which, by the by, if not uniformly pursued, might be disappointed) then the several members might be justly compared to ambassadors met in a Congress, and could only report their proceedings for the ratification of their principals ; but Congress resolved to put the colonies in a state of defence; they raised an army, they appointed a commander in chief, with other general and field officers ; they modelled the army, disposed of the troops, emitted bills of credit, pledged the confederated colonies for the redemption of them, and in short, acted in all respects like a body completely armed with all the powers of var ; and at all this I find act the least symptom of discontent among all the confederated States, or the whole people of America; on the contrary, Congress were universally revered, and looked up to as our political fathers, and the saviours of their country. But if Congress possessed the right of war, they had also authority to equip a naval force ; they did so, and exercised the same authority over it, as they had done over the army; they passed a resolution for permitting the inhabitants of the colonies to fit out armed vessels to cruize against the enemies of America; directed what vessels should be subject to capture, and prescribed a rule of distribution of prizes, together with a form of commission, and instructions to the commanders of private ships of War : they directed that the general assemblies, conventions, and councils or committees of safety of the United Colonies, should be supplied with blank commissions, signed by the President of *112 Congress, to be by them filled up, and delivered to any person intending to fit out private ships of war, on his executing a bond, forms of which were to be sent with the commissions, and the bonds to be returned to Congress. These bonds are given to the President of Congress, in trust for the use of the United Colonies, with condition to conform to the commission and instructions. The commission, under which the Captain of the respondents acted, was one of these commissions, it seems, only this is attempted to be qualified by saying that it was countersigned by the Governor of New Hampshire ; but this circumstance seems to me to be of no importance. Whoever has the right of commissioning and instructing, must certainly have the right of examining and controlling, of confirming or annulling the acts of him who, accepts the commission, and acts under it. And this exercise of authority in granting commissions seems to have had the special sanction of the several colonies, as they filled up the commissions, took the bonds, and transmitted,them to Congress. It was urged in the course of the argument, that if Congress did enjoy the power contended for, the confederation, which was a thing of fuch long and anxious expedition, was not of any consequence ; but it is to be observed, that that instrument contained some important powers which could not be derived from the right of war and peace; it was of importance, also, as a confirmation of the powers claimed as necessarily incident to war, because some of the States appeared not to be sensible of, nor to have acknowledged such incidency ; and yet the power may have existed before. It is true, that instrument is worded in a manner, on which some stress has been laid, that the several States should retain their sovereignties, and all powers not thereby expressly delegated to Congress, as if they were, till the ratification of that compact, in possession of all the powers thereby, delegated ; but it seems to me, that it would be going too far, from a single expression, used perhaps in a loose sense, to draw an inference so contrary to a known fact, to wit,that Congress was, with the approbation of the States, in possession of some of the powers there mentioned, which yet, if the word retain be taken in so strict a sense, it must be supposed they never had. I take the truth to be, that the framers of that instrument were contemplating what powers Congress ought to have had at the beginning; and that in reference to the first occasion of their assembling to oppose the tyranny of Great Brittain, at least in reference to the time of framing the confederation, say, the States shall retain. But however that may be, as I said before, I think it is laying too great a stress upon a single word, to contradict some things which were evidently true.
“ But it was said that New Hampshire had a right to revoke *113 any authority fee may have consented to give to Congress, and that by her acts of assembly fee did in fact revoke it, if it were ever given. To this a very satisfactory answer was made: if fee had such a right, there was but one way of exercising it, that is, by withdrawing herself from he confederacy ; while fee continued a member, and had representatives in Congress, fee was certainly bound by the acts of Congress. I am therefore of opinion that those acts of New Hampshire, which restrain the jurisdiction of Congress, being contrary to the legitimate powers of Congress, can have no binding force, and that under the authority of Congress an appeal well lay from the Courts of Admiralty of that State, to the Court of Commissioners of Appeals. That Court has already affirmed their jurisdiction in this particular case, upon a plea put in against it; and upon that account, also, I incline to think that this court, not being a court of superior authority, ought not to call it in question. Under these impressions, I must; of course, decree (whatever may be the hardship of the case), that the Respondents, pay to the Libellants, their damages and costs, occasioned by not complying with the decree of the Court of Appeals, the quantum of which to be ascertained by Commissioners."
If the reasoning upon which I went, in pronouncing the above decree, in favour of the jurisdiction of the Court of Appeals, be unfound, and if the decree stand in need of some better support, it will probably find it in the confederation, by which authority is given to Congress, to erect Courts of Appeals in all cases; and from that time the authority of the court of appeal is confessed; the present case was then depending before that court, they asserted their jurisdiction, and gave a final decree. As to the objection, that previously to the confederation, Congress were themselves sensible, that they did not possess Supreme Admiralty jurisdiction, because of their recommending to the several States, that they should erect Courts of Admiralty, for the trial of prizes, with appeal to Congress, I see not how such recommendations can prove any thing of the kind ; for Congress might have authority to establish such courts in the respective States, when yet they chose only to recommend to the States to do it. But admitting the authority of the Court of Appeals, and the propriety of applying, to the District Court of New Hampshire, to inforce that decree in the way of damages, for not restoring the vessel and cargo, when through the disobedience of the present Plaintiffs in error, specific restitution was become impossible, yet if any thing erroneous can be found in the decree of the Circuit Court, it is the duty of this court to correct it. It is objected, that the damages allowed, were too high, including interest on the app *114 reciation of the Sufanna and her cargo, from so remote a period as the sale of the vessel and cargo.
That George Wentworth, being a mere agent, and having distributed among those who were entitled, under the decrees of the Courts of Admiralty of New Hampshire, all the money by him received for their use, ought not to have been subjected by the decree of the Circuit Court, to the repayment of that money.
And that a lumping decree, subjecting the Respondents indiseriminately, to the payment of all the damages, although their intrests were several and distinct, was also erroneous.
It does not, indeed, appear to me, that the decree, is for the payment of too large a sum, the damages having been swelled by interest, calculated upon the appraised value of the Susanna, her apparel, and of her cargo,from so remote a period. The decree ef the Court of Appeals was merely for restitution, and that the Appellants should be placed at that time in the same, situation as they were in, previous to the capture. A compensation for the loss they sustained in being in the mean time deprived of their property, was not provided for in the decree, nor were even costs allowed. The libel in the Circuit Court being bottomed on the decree of reversal, fought only a compensation in damages equivalent to a restitution as the time of the reversal: Interest, therefore, ought, I think, to have been allowed only from that time.
George Wentworth, it is true, was not concerned in interest; he represented the interest of the officers and seamen, but had none himself; and a mere agent who has paid away all, or any part of the money by him received in that character, without having been by a monition notified of the appeal, will be allowed credit in his account for the money so paid away. But George Wentworth appears, I think, in another character besides that of an agent: he was a party libellant, as such he knew that the Claimants were dissatisfied with the decrees of the Admiralty Courts of New Hampshire, having, prayed an appeal to Congress, and offered the requisite security; and when the petition of appeal was referred to the Court of Commissioners, and they directed notice to be given to the parties, who appeared before that court, it seems evident that they had notice. What then is the effect of this ? Was any thing further necessary to suspend the decrees of the State Courts ? An inhibition is, indeed, worded in a manner naturally leading to the supposition, that that instrument was necessary to effect a suspension; but this, I think, cannot be the case; for, it is observable, that by the practice, an interval of three months is allowed before the inhibition is fued out, in which time, if nothing had antecedently suspended the sentence, it might be car *115 ried into complete effect, and every body be justified in their conduct, as paying obedience to a decree continuing in full force. The inhibition may be intended only as a more formal direction to cease farther, proceedings, when yet they may have been inhibited before: it has a farther use also, for it appoints a day for the attendance of the parties. Conformably to this idea, it is said, in Domain that the appeal suspends the decree. But a distinction is attempted here; it is admitted that an appeal allowed by the inferior court, suspends, while an appeal received by a superior court, is denied to have that effect. But according to Domat, it works a suspension, even, against the will of the inferior Judge; and it would be very strange, if the suspending operation of an appeal, to a Judge who has an authority to reverse, should depend upon the consent of the inferior Judge. But if the sentences of the State Courts were indeed suspended, no person had authority to act under them ; and if any do, he takes upon himself the consequences. Besides, if George Wentworth had innocently and without notice, distributed the money which came to his hands, should not this have been shewn to the Court of Appeals? If that had been done, perhaps after reversing the decrees of the State Court, instead of decreeing restitution, they might have only decreed that the owners should pay to the Appellants, the moiety of the sales by them received. But they have decreed restitution specifically; and if this court should so model the decree of the Circuit Court, as to exonerate Mr. Wentworth, as to the moiety of the money by him received, it will substantially alter the decree of the Court of Appeals ; and yet we say, that the decree now is to be bottomed on that of the Court of Appeals, which is now to be supposed right; and that for that reason it was erroneous in the Circuit Court, to carry interest farther back than from the period of reversal, and in this way give damages, which were not intended by the Court of Appeals.
The decree of the Circuit Court, appears now, I confess, to be wrong, in that it subjects all the Defendants, indiscriminately; to the payment of all the damages. In the original libel, they had indeed joined, but it was in right of several interests, which I think ought to have been distinguished in the decree; justice obviously requires this; so obviously, that it is enough to State the case to obtain the mind’s assent to the propriety of distributive damages, instead of those which the decree contemplates. I will only say further, that I have no remembrance of having had this point brought to my view at the Circuit Court, and it certainly did not occur to myself; but if any thing was said upon the point, and I, with deliberating, then preferred the decree as it stands, I am clearly now, of a different opinion. Upon the whole, I think the decree of the *116 Circuit Court will stand as it ought, when corrected by reducing the damages in the manner proposed, and when so reduced, by proportioning them among the then Defendants, according to their distinct interests.

Cushing, Justice. The facts of this case being already fully stated by the court, I shall go on to enquire, whether the decree of the Circuit Court ought to be reversed, for any of the errors assigned.

The first is, that the Court of Appeals, which made the decree of restoration, had not jurisdiction of the cause.

In answer to this, I concur with the rest of the court, that the Court of Appeals, being a court under the confederation of 1781, of all States, and being a court for "determining finally, appeals in all cases of capture," and so being the highest court, the dernier resort in all such cases, their decision upon the jurisdiction and upon the merits of the cause, having heard the parties by their council, must be final and conclusive, to this, and all other courts : to this, as a Court of Admiralty, because it is a court of the same kind, as far as relates to prize, and without any controuling or revisionary powers over it ; to this as a court of common law, because it is entirely a prize-matter, and not of common law cognizance. The cases, therefore, cited to shew, that the common law is of general jurisdiction, and that the courts of a special, limited jurisdiction, and that the court of King's bench, prohibits, controuls, and keeps within their line, Admiralty Courts, Spiritual Courts, and other courts of a special, limited jurisdiction, do not, I conceive, touch this case.

It is conceded by all, that the decision of a court competent is final and binding. Now, if the Court of Appeals was, under the confederation of all the States, a court constituted " for determining finally appeals in all cases of capture, " it was a court competent; and they have decided. Again; the Admiralty of England gives credence and force to the decisions of foreign courts of Admiralty; why not equal reason here ?

It is true, the courts of common law there, will not allow a greater latitude to the jurisdiction of foreign courts of Admiralty, than to their own ; as it seems natural and reasonable, they should not; for instance, holding plea of a contract made entirely at land, which seems to have been the substantial ground of prohibition, in the case cited, respecting the decree in Spain.

If the decree of the court of Apeals must be considered as binding, as it must, or there may never be an end to this controversy; that will carry an answer to several other errors assigned, viz. the third, fifth, and seventh, respecting the cause not being regularly before Congress or the court, and respecting the Circuit Court not entering into the merits—and to so *117 me other particular exceptions; as, that appealing to the Superior Court of New-Hampshire, was a waver of the right of appeal to Congress : If that appeal was consistent with the resolve of Congress, which only provided an appeal to Congress in the last resort, it was not a waver. Again, it is said, there ought to have been a jury at the Court of Appeals ; but that, clearly, was not the intent of the resolve of Congress, nor of the Confederation, nor correspondent to the proceedings in courts of Admiralty, even where trials by jury are used and accustomed in other matters ; nor was it thought a proper or nccessary provision in the present constitution, which has been adopted by the people of the United States.
As to the original question of the powers of Congress, respecting captures, much has been well and eloquently said on the both sides. I have no doubt of the sovereignty of the States, saving the powers delegated to Congress, being such as were, "proper and necessary" to carry on, unitedly, the common defence in the open war, that was waged against this country, and in the support of their liberties to the end of the contest.
But, as has been said, I conceive we are concluded upon that point, by a final decision heretofore made.
The 2d exception in error is, that the sentence of the Court of Appeals was void by the death of Mr. Doane.
That fact does not appear upon the record of the Court of Appeals, and I think we cannot reverse the decree in this incidental way, if it could be done upon a writ of error. If it was pleadable in abatement, it ought to have been pleaded or suggested there by the opposite party.
On the contrary, it is implied by the record that Doane was alive; otherwise he could not have been heard by his council as the record sets forth ; for a dead man could not have council or attorney. On the other hand, the letters of administration imply that he was dead at the time; but those letters were not before the court, and therefore could not be a ground for their abating the suit, if it was abateable at all for such a cause. Here seems to be record against record, as far as implications go, and I take it to be an error in fact, for which, by the judicial act, there is to be no reversal. Upon this head, a case in Sir Thos. Raymond, is cited by the council for the Plaintiff in error, of trover by five plaintiffs—one dies—the rest proceed to verdict and judgment—and adjudged error, because every man is to recover according to the right he has at the time of bringing the action ; and here each one was not, at the time of bringing the action, entitled to so much as at the death of one of the plaintiffs."
But a cafe in Chancery Cases, p. 122, is more in point— where money was made payable by the decree to a man that *118 was dead, and yet adjudged, among other things, no error. But another matter, which seems well to rule this case, is, that, being a suit in rem, death does not abate it.
So say some books, and I do not remember to have heard any to the contrary. It does not affect the justice of the cause; it makes no odds to the plaintiff in error, whether the money is to be paid to Colonel Doane being alive, or to his legal representatives, if dead.
The 4th exception, that damages are not prayed for, yet decreed, is answered by a prayer for general relief.
The 8th exception is, that the District and Circuit Court possessed not admiralty jurisdiction, and that the Circuit Court had no right to carry the decree into execution.
If courts of Admiralty can carry into execution decrees of foreign Admiralties, as seems to be settled law and usage; and if the District and Circuit Courts, have admiralty powers by the law and constitution, as was adjudged and determined by this court last February, I think there can be no doubt upon this point
. Another queftion of confequence is, whether Mr. George Wentworth, being agent fov°the captors, and having paid over, • can be anfwerable jointly with the other libellants for the whole, or, in any way, for arty part. If it was {imply the cafe of an agent regularly paying over, 1 fhoulci fuppofe he could not juftly be called upon to refund.' But it feems.he was an original libellant, a party through the ;whole courfe of the fuit; and an appeal being claimed in: timé, at the court and .term, at which -the libellants obtained .the'decree (of which, therefore," he had legal notice) the appeal, if a lawful one, in my opinion, fufpended' the fentence and muff make him anfwerable for whatever monies he ihould receive under that decree, in cafe of re 1 vqrfal:. every man being bound to take notice of the law, at his peril»
It is suggested, that an inhibition was necessary to take off the force of the sentence. An inhibition (according to the form of one produced, which issued in England last July, near four months after the trial and appeal at New-Providence inhibits the judge and the party from doing any thing in prejudice of the appeal, or of the jurisdiction of the court appealed to, and cites the party to appear and answer the party appellant, at a certain time and place. The citation to the party to appear and answer at the proper time and place, I take to be the most substantial part of the process; the inhibitory part to be rather matter of form, or in pursuance of the suspending nature of the appeal, and as a further guard and caution against misapplying the property. For it appears to me absurd to suppose, that an inhibition taken out seven or eight months after the *119 appeal (nine months being allowed for the purpose) should be the only thing that suspended the sentence, leaving the judge below and the party, all that time, to carry the sentence into compleat execution.
The judicial act in providing an appeal in maritime causes to the Circuit Court, contains no hint of an inhibition as necessary to suspend the sentence. Domat is express, that an appeal has that effect, and I believe other civil law writers.
The rejection of the appeal, if unwarranted, could not take away the right of the citizen.
There does not appear any thing actually compulsory upon Mr. George Wentworth, to pay the money, except what may be supposed to be contained in the decree appealed from, the force of which was suspended. All this matter might have been offered at the Court of appeals, where the parties were fully heard, and, if offered, was, no doubt, involved in their decision.
It is said, if I understood the matter right, that there ought, to have been a monition from the Circuit Court to Mr. Wentworth, to bring in what he had in his hands.
I see no necessity for a monition exadtly in that form. There was a monition to come in and answer the libellants upon the justice of the cause, as set forth;—he came in and had an opportunity to defend himself: and the question was, whether he was answerable upon the circumftances of the cafe, which was determined by the court.
By the cases in Durnford and East, as well as from other books, it is clear that the admiralty has not only jurisdiction in rem, but also power over the persons of the captors and all those who have come to the possession of the proceeds of the prize, to do complete justice as the case requires, to captors and claimants.
But I cannot conceive why the decree of the court of appeals is not conclusive upon Mr. George Wentworth as much as upon the other libellants.
Again; it is objected, that the decree being for restoration, damages could not be awarded. The decree was not complied with—the thing was gone. How, then, could justice be done without giving damages ?
Then the question is, how are we to understand the decree ; as joint upon all the libellants for thewhole, Mr. George Wentworth included, or as decreeing the owners to restore one half, and Mr. George Wentworth, agent for the captors, the other half?
If the latter, which perhaps maybe a reasonable and just construction, conformable to the spirit of the original, libel, then the decree of the Circuit Court is in that respect erroneous. *120 Also as to damages, I suppose, interest ought not to have been allowed farther back than the decree. The only queftion that remains, is whether this court can rectify those errors, consistently with the judicial act. And I think it may, as there is sufficient matter, apparent upon the record, to do it by.
I agree that each party bear their own costs of this court.
By the Court.
Ordered, That against all the Plaintiffs in error, except George Wentworth, sixteen thousand three hundred and sixty dollars and sixty-eight cents, be recovered by the Defendants in error, and the same sum against George Wentworth ; and that against the Plaintiffs in error the costs of the Circuit Court be recovered, one half against George Wentworth, and the other half against the other. Plaintiffs in error; and that in this Court the parties pay their own costs.