239 F.3d 169 (2nd Cir. 2001)
 JAMES BARNA & JASON B. NICHOLAS, for themselves and on behalf of all others similarly situated, Plaintiffs-Appellants,
v.
BRION D. TRAVIS, Chairperson, New York State Division of Parole, VANESSA CLARKE, GEORGE E. KING, S. EARL EICHELBERGER, LEO S. LEVY, MARIETTA GAILOR, ANTHONY UMINA, MARIA RIVERA BUCHANAN, IRENE PLATT, LAWRENCE IBSEN, HENRI RAFFALLI, SEAN R. MCSHERRY, GABRIEL PAGAN, DANIEL TAUREILLO, VERONICA THOMAS, ISRAEL GONZALEZ, MARY ELLEN JONES, GRABER, Commissioner, New York State Division of Parole, GEORGE E. PATAKI, Governor, State of New York, PAUL SCHECTMAN, Director, New York State Division for Criminal Justice Services, MICHAEL HAYDEN, Deputy Chief of Operations, New York State Division of Parole, Defendants-Appellees.
 Docket No. 99-0286
August Term, 2000
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Submitted: December 5, 2000
Decided: February 02, 2001
 
 Appeal from a judgment of the United States District Court for the Northern District of New York, Frederick J. Scullin, Jr., Chief Judge, dismissing action alleging violations of Due Process Clause and Ex Post Facto Clause in parole application denials.
 Affirmed.
 JAMES BARNA, Woodbourne, N.Y., Plaintiff pro se; JASON B. NICHOLAS, Warwick, N.Y., Plaintiff pro se.
 ELIOT SPITZER, Attorney General of the State of New York, Albany, New York (Nancy A. Speigel, Assistant Solicitor General, Peter H. Schiff, Senior Counsel, Alicia R. Ouellette, Assistant Solicitor General, Albany, New York, of counsel), for Defendants-Appellees.
 Before: NEWMAN, KEARSE, and WINTER, Circuit Judges.
 Per Curiam:
 
 
 1
 Pro se plaintiffs James Barna and Jason B. Nicholas, New York State ("State") prisoners, appeal from a judgment of the United States District Court for the Northern District of New York, Frederick J. Scullin, Jr., Chief Judge, dismissing their action brought under 42 U.S.C. §1983 alleging that the State violated their rights under the Due Process and Ex Post Facto Clauses of the Constitution in denying their applications for parole. The district court dismissed the complaint for failure to state a claim on which relief can be granted. On appeal, plaintiffs argue that they stated a claim under the above provisions by alleging that the State systematically denies parole to prisoners who were convicted of crimes of violence. Finding no basis for reversal, we affirm.
 
 
 2
 In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme. See, e.g., Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 11-13 (1979); Berard v. Vermont Parole Board, 730 F.2d 71, 75 (2d Cir. 1984); Boothe v. Hammock, 605 F.2d 661, 663 (2d Cir. 1979). Neither the mere possibility of release, see id.; cf. Pugliese v. Nelson, 617 F.2d 916, 925 (2d Cir. 1980), nor a statistical probability of release, cf. Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 465 (1981), gives rise to a legitimate expectancy of release on parole. See, e.g., Berard v. Vermont Parole Board, 730 F.2d at 74-75.
 
 
 3
 The New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release. The State statute creates a parole board that has the power and the duty to determine "which inmates serving an indeterminate ... sentence of imprisonment may be released on parole ... and when." N.Y. Exec. Law §259 c.1. The board is to establish its own guidelines for making such parole decisions. See id. §259 c.4. The current parole board guidelines state, in pertinent part, that the purpose of the guidelines is to "structure [the parole board's] discretion with regard to [minimum-period-of-imprisonment] and release decisions," that the guidelines "are based on only two major factors crime severity and past criminal history," and that "[t]hey are intended only as a guide, and are not a substitute for the careful consideration of the many circumstances of each individual case." 9 N.Y.C.R.R. §8001.3(a). The statute governing parole provides expressly that
 
 
 4
 [d]iscretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law.
 
 
 5
 N.Y. Exec. Law §259 i(2)(c)(A).
 
 
 6
 Thus, "[i]t is apparent that New York's parole provisions ... do not establish a scheme whereby parole shall be ordered unless specified conditions are found to exist .... [N]o entitlement to release is created [by the parole provisions]." Boothe v. Hammock, 605 F.2d at 664. Accordingly, plaintiffs have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable.
 
 
 7
 Nor is there merit in plaintiffs' claims that State parole procedures adopted after they were incarcerated violate the Ex Post Facto Clause. That Clause applies only to "legislative action that retroactively 'punishes as a crime an act previously committed, which was innocent when done,' 'makes more burdensome the punishment for a crime, after its commission,' or 'deprives one charged with crime of any defense available according to law at the time when the act was committed." Doe v. Pataki, 120 F.3d 1263, 1272 (2d Cir. 1997) (quoting Beazell v. Ohio, 269 U.S. 167, 169-70 (1925)). A law that is merely procedural and does not increase a prisoner's punishment cannot violate the Ex Post Facto Clause even when applied retrospectively. SeeCalifornia Dep't of Corrections v. Morales, 514 U.S. 499, 507-09 (1995).
 
 
 8
 The Ex Post Facto Clause does not apply to guidelines that do not create mandatory rules for release but are promulgated simply to guide the parole board in the exercise of its discretion. See, e.g., DiNapoli v. Northeast Regional Parole Commission, 764 F.2d 143, 145-47 (2d Cir.), cert. denied, 474 U.S. 1020 (1985). Such guidelines "are not 'laws' within the meaning of the ex post facto clause." Id. at 147; Beltempo v. Hadden, 815 F.2d 873, 875 (2d Cir. 1987) (quoting DiNapoli).
 
 
 9
 Plaintiffs' reliance on Shepard v. Taylor, 556 F.2d 648 (2d Cir. 1977), for the contrary proposition is misplaced. That case involved juvenile offenders, and our opinion stated that similar parole guidelines would not violate the Ex Post Facto Clause if they were applied to adults. See id. at 654.
 
 
 10
 We have considered all of plaintiffs' contentions on this appeal and have found them to be without merit. The judgment of the district court is affirmed.