08-4107-pr
Edwards v. Superintendent

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 26th day of January, two thousand ten.

Present:
>           WILFRED FEINBERG,
>           ROBERT A. KATZMANN,
>                   *Circuit Judges*,
>           T. S. ELLIS, III,
>                   *District Judge*.[*]

_____

CHARLES EDWARDS,

>           *Petitioner-Appellant*,

>                   v.                                                  No. 08-4107-pr

GLEN S. GOORD, COMMISSIONER,

>           *Respondent*,

SUPERINTENDENT, FRANKLIN CORRECTIONAL FACILITY,

>           *Respondent-Appellee*.

_____

_____

[*] The Honorable T. S. Ellis, III, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

For Petitioner-Appellant:          VIVIAN SHEVITZ, South Salem, NY

For Respondent-Appellee:           THOMAS B. LITSKY, Assistant Attorney General
                                   (Barbara D. Underwood, Solicitor General, Roseann
                                   B. MacKechnie, Deputy Solicitor General for
                                   Criminal Matters, *of counsel*), *for* Andrew M.
                                   Cuomo, Attorney General of the State of New York,
                                   New York, NY


Appeal from the United States District Court for the Northern District of New York (Singleton, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court entered August 4, 2008, is **AFFIRMED**.

Petitioner-Appellant Charles Edwards appeals from a judgment of the United States District Court for the Northern District of New York (Singleton, *J.*), entered August 4, 2008, denying his petition for habeas corpus relief. We assume the parties' familiarity with the facts, procedural history, and specification of issues on appeal.

We review a district court's decision to grant or deny habeas corpus relief *de novo*, and we review the district court's findings of fact for clear error. *Jackson v. Edwards*, 404 F.3d 612, 618 (2d Cir. 2005). Because Edwards is "in custody pursuant to the judgment of a State court," 28 U.S.C. § 2254(a), and because both of his claims of constitutional violations were adjudicated on the merits in a state court, *id.* § 2254(d), his application for the writ shall not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1).

2

Petitioner first argues that his Fourteenth Amendment right to due process of law was violated when the Time Allowance Committee ("TAC") at the Gowanda Correctional Facility recommended that he not receive any good time credits and the designee of the Commissioner of the New York State Department of Correctional Services ("DOCS") affirmed this recommendation, after the Commissioner's designee had previously affirmed the recommendation of the TAC at the Attica Correctional Facility that he receive five years and eight months of good time credits.

"In evaluating due process claims, the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001) (alteration and internal quotation marks omitted). Prisoners do not have a protected liberty interest in parole where the relevant statutory scheme endows prison authorities with discretion over the decision whether to grant it. *See Greenholtz v. Inmates of the Neb. Penal and Corr. Complex*, 442 U.S. 1, 9-11 (1979); *Barna v. Travis*, 239 F.3d 169, 170-71 (2d Cir. 2001). On the other hand, the Supreme Court has held that a prisoner has a protected liberty interest in an award of good time credits when the applicable state statutory scheme provides that credits, once awarded, may only be revoked under specific circumstances. *Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974); *see also Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (reaffirming the correctness of *Wolff*'s holding). In such an instance, the prisoner is entitled to a hearing that meets certain minimum due process requirements before the good time credits may be revoked. *See Wolff*, 418 U.S. at 557-58, 563-72.

Edwards concedes that the initial decision as to the award of good time credits to him was discretionary and that he had no entitlement to receive any such credits. He argues, however, that

3

once the commissioner's designee, in accordance with the applicable regulations, *see* N.Y. Comp. Codes R. & Regs tit. 7, § 262.1, adopted the recommendation of the Attica TAC that he be granted five years and eight months of good time credits, this decision became "final" under N.Y. Corrections Law § 803(4) and he thereby acquired a protected liberty interest. He asserts that his due process rights were then violated when the Gowanda TAC and, ultimately, the Commissioner made the decision to revoke his award.

We are mindful that under *Wolff*, the arbitrary revocation of previously awarded good time credits runs afoul of the Fourteenth Amendment's guarantee of due process. *See* 418 U.S. at 557. But here, the discretionary award of good time credits to Edwards was reconsidered in accordance with the procedures generally set forth in N.Y. Comp. Codes R. & Regs tit. 7, §§ 261.3-261.4. Edwards received a second hearing before the Commissioner, through his designee, ultimately adopted the Gowanda TAC's recommendation that Edwards' refusal to participate in sex offender counseling made him an inappropriate candidate for such an award. Edwards does not contend that this second hearing was procedurally deficient under *Wolff* or any other applicable precedent. Moreover, Edwards does not dispute that his refusal to participate in sex offender counseling was a relevant consideration under the applicable statute. *See* N.Y. Corrections Law § 803(1)(a) (providing that good time credits "may be granted for . . . progress and achievement in an assigned treatment program, and may be withheld, forfeited or canceled in whole or in part for . . . failure to perform properly in the . . . program assigned").

Petitioner's argument focuses largely on N.Y. Corrections Law § 803(4), which provides that

No person shall have the right to demand or require the allowances authorized by this

4

section. The decision of the commissioner of correctional services as to the granting, withholding, forfeiture, cancellation or restoration of such allowances shall be final and shall not be reviewable if made in accordance with law.

According to Edwards, this provision rendered his initial award of good time credits final and unalterable, except in the event of some subsequent misconduct on his part, *see* N.Y. Comp. Codes R. & Regs tit. 7, § 263.2(b). We cannot agree. The overall import of § 803(4) is to reinforce the discretionary nature of the commissioner's decision regarding good time credits, not to curtail the commissioner's authority. Under petitioner's reading of the applicable statute and regulations, if it came to light that an award of good time credits was based on a factual error and a prisoner who posed a danger to the community was mistakenly set to be released early, the Commissioner would be powerless to take any action. We do not think that the statute can reasonably be interpreted to so stringently circumscribe the Commissioner's authority.

Petitioner argues, in the alternative, that his Fifth Amendment privilege against compelled self-incrimination was violated when DOCS conditioned the award of good time credits on his willingness to participate in a sex offender counseling program, and that program required participants to admit responsibility for their crimes of conviction and any other uncharged sex offenses they have committed without offering them immunity from prosecution.[1] This argument fails, however; habeas relief may only be granted if the state court's decision on

---

[1] In 2001, inmates in the New York State prison system filed a class action lawsuit in the Northern District of New York, bringing a Fifth Amendment challenge to the DOCS's practice of denying good time credits to prisoners who refuse to admit guilt to criminal sexual conduct as part of their sex offender counseling. In October 2008, the parties to that lawsuit entered into a court-approved settlement pursuant to which the DOCS has agreed to give prisoners immunity with regard to any information disclosed in the course of sex offender counseling. The settlement agreement remains in effect through October 3, 2010. Petitioner was not a party to this lawsuit, and neither he nor respondent has argued that the existence of this lawsuit affects our analysis of petitioner's Fifth Amendment claim.

5

the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1). The relevant decision of the Supreme Court, *McKune v. Lile*, 536 U.S. 24 (2002), does not clearly establish that the Fifth Amendment's privilege against compelled self-incrimination was violated under the circumstances presented here.

In *McKune*, the Supreme Court considered a sex offender treatment program in Kansas state prisons under which participants were required to admit responsibility for their crime of conviction and to complete a "sexual history form" detailing all prior sexual activities, including those that would constitute uncharged criminal offenses.  *Id.* at 30.  No immunity from future criminal prosecution was offered to participants.  *Id.*  Prisoners who refused to participate suffered a reduction in their privileges, including restrictions on their visitation rights, work opportunities, canteen expenditures, access to a personal television, and transfer to a maximum-security unit.  *Id.* at 30-31.  Five justices found that the program did not violate prisoners' Fifth Amendment privilege against self-incrimination, but there was no majority opinion setting forth the appropriate analysis or rule.  A plurality drew on the reasoning of *Sandin*, which defines the protected liberty interests of prisoners, for due process analysis, as "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  515 U.S. at 484.  The *McKune* plurality found that a sex offender counseling program such as the one adopted in Kansas prisons "does not violate the privilege against self-incrimination if the adverse consequences an inmate faces for not participating" fall short of constituting "atypical and significant hardships" under *Sandin*'s definition.  *McKune*, 536 U.S. at 37-38.  Justice O'Connor, concurring, rejected the plurality's reliance on the *Sandin*

6

due process standard, but agreed that the particular facts of *McKune* did not amount to compulsion under existing Fifth Amendment caselaw. *Id.* at 53-54.

All that can be said of *McKune*, then, is that a majority of the justices agreed that the Fifth Amendment privilege against compelled self-incrimination was not violated when prisoners faced less restrictive sanctions than Edwards faced here as a consequence of refusing to participate in sex offender counseling. While the plurality did note, in reaching its conclusion, that "respondent's decision not to participate in the Kansas [sex offender treatment program] did not . . . affect his eligibility for good-time credits or parole," *id.* at 38, the phrase "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), "refers to the holdings, as opposed to the dicta, of th[e] Court's decisions at the time of the relevant state-court decision," *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Accordingly, we cannot conclude, on the basis of *McKune*, that the state court's determination that Edwards' constitutional rights were not violated by the DOCS program was contrary to clearly established Federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).

We have considered Edwards' other arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK