11-116-pr
Graziano v. Pataki

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2011

(Argued: March 8, 2012      Decided:  August 3, 2012)

_____

PETER GRAZIANO, JAMES BUCKLEY, MARK MALONE, ROBERT A. HARRIS, WILLIAM WALKER, AARON TALLEY, MAURICE MURRELL, STEVEN HO, and BRIAN JACQUES, suing on behalf of themselves
and all others similarly situated,

*Plaintiffs-Appellant*s,

—v.—

GEORGE E. PATAKI, Governor of the State of New York, ROBERT DENNISON, Chairman of the New York State Division of Parole, and THE NEW YORK STATE DIVISION OF PAROLE,

*Defendants-Appellees*.

Docket No. 11-116-pr

_____

B e f o r e : KATZMANN and WESLEY, *Circuit Judges,* and UNDERHILL, *District Judge.**

_____

Appeal from a December 16, 2010 judgment of the United States District Court for the Southern District of New York (Seibel, *J.*) granting defendants' renewed motion to dismiss plaintiffs' class action for failure to state a claim.  We hold that plaintiffs have failed to state a claim for violation of their federal constitutional rights under either the Fourteenth Amendment or the Ex Post Facto

_____

* The Honorable Stefan R. Underhill, of the United States District Court for the District of Connecticut, sitting by designation.

Clause. **AFFIRMED**.
Underhill, District Judge, filed a separate opinion dissenting.

_____

ROBERT N. ISSEKS (Alex Smith, *on the brief*), Middletown, NY; Peter A. Sell, New York, NY, *for Plaintiffs-Appellants.*

STEVEN C. WU, Assistant Solicitor General (Barbara D. Underwood, Solicitor General; Benjamin N. Gutman, Deputy Solicitor General, *on the brief*), *for* Eric T. Schneiderman, Attorney General of the State of New York, New York, NY, *for Defendants-Appellees.*

_____

PER CURIAM:

Plaintiffs-Appellants Peter Graziano, James Buckley, Mark Malone, Robert A. Harris, William Walker, Aaron Talley, Maurice Murrell, Steven Ho, and Brian Jacques (collectively, "Plaintiffs") filed this class action against Defendants-Appellees George Pataki, the Governor of the State of New York; Robert Dennison, the Chairman of the New York State Division of Parole; and the New York State Division of Parole (collectively, "Defendants") on behalf of themselves and all other New York State prisoners convicted of violent felony offenses. Plaintiffs allege that they have been denied parole as a result of an "unwritten policy" to deny parole to violent felony offenders, and that this unofficial policy violates three provisions of the federal constitution: (1) the Due Process Clause of the Fourteenth Amendment; (2) the Equal Protection Clause of the Fourteenth Amendment; and (3) the Ex Post Facto Clause. Because we conclude that Plaintiffs have failed to state a claim for violation of their rights under any of these provisions, we affirm the December 10, 2010 judgment of the United States District Court for the Southern District of New York granting Defendants' motion to dismiss Plaintiffs' complaint pursuant to Rule 12(c) of the Federal Rule of Civil Procedure.

New York's parole system is administered by the Board of Parole (the "Board"). *See*

New York State Executive Law §§ 259, 259-b. The Board's authority to grant parole release is

governed by Executive Law § 259-i, which provides, in relevant part:

> Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, *and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law*. In making the parole release decision, the procedures adopted pursuant to subdivision four of section two hundred fifty-nine-c of this article shall require that the following be considered: (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interactions with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) any deportation order issued by the federal government against the inmate while in the custody of the department and any recommendation regarding deportation made by the commissioner of the department pursuant to section one hundred forty-seven of the correction law; (v) any statement made to the board by the crime victim or the victim's representative, where the crime victim is deceased or is mentally or physically incapacitated; (vi) the length of the determinate sentence to which the inmate would be subject had he or she received a sentence pursuant to section 70.70 or section 70.71 of the penal law for a felony defined in article two hundred twenty or article two hundred twenty-one of the penal law; (vii) the *seriousness of the offense* with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the presentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest prior to confinement; and (viii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.

§ 259-i(2)(c)(A) (emphasis added). "While consideration of these guidelines is mandatory, the

ultimate decision to parole a prisoner is discretionary." *Silmon v. Travis*, 95 N.Y.2d 470, 477

(2000). In addition, although the Board "must provide the inmate with a proper hearing in which

only the relevant guidelines are considered," it "need not expressly discuss each of these

guidelines in its determination." *King v. N.Y. State Div. of Parole*, 83 N.Y.2d 788, 791 (1994).

-3-

An inmate who objects to a parole denial may file an administrative appeal with the Board's Appeals Unit, *see* Executive Law § 259-i(4)(a); 9 N.Y.C.R.R. §§ 8006.1(a), 8006.4(a), and an inmate may challenge the Appeals Unit's decision in New York state court by filing a petition under Article 78 of New York's Civil Practice Law and Rules, *see, e.g.*, *Garcia v. N.Y. State Div. of Parole*, 657 N.Y.S.2d 415 (N.Y. App. Div. 1997).

The named plaintiffs represent a class of prisoners who (1) were convicted of A-1 violent felony offenses, such as murder; (2) have served the minimum terms of their indeterminate sentences and are therefore eligible for parole release; and (3) have had their most recent applications for parole release denied by the Board because of the seriousness of the underlying offense. *See Graziano v. Pataki*, No. 06 Civ. 480 (CLB), 2007 U.S. Dist. LEXIS 89737, at *5 (S.D.N.Y. Dec. 5, 2007). Their complaint alleges that defendant George Pataki, who was Governor of New York from 1995 to 2006, adopted an unwritten policy to deny parole to violent felony offenders solely because of the violent nature of their offenses and "without any meaningful consideration or balancing of any other relevant or statutorily mandated factors." First Amended Compl. ¶ 21. This "unofficial policy" assertedly led to a drop in the release rates for violent offenders, from a high of 28% in 1993-94 to a low of 3% in 2000-01.[1] *See* First Amended Compl. & Attach; *see also* Pls.' Br. 11. Plaintiffs maintain that this alleged policy constitutes "a violation of due process and equal protection and is an unconstitutional ex post

---

[1] However, Plaintiffs acknowledged in the proceedings below, in their principal brief on appeal, and during oral argument that parole release rates for A-1 violent felons have steadily risen from their low point in 2000-01; for example, release rates had increased to 6.5% by 2004 and to 21.1% by 2006. *See, e.g.*, Decl. of Robert N. Isseks ¶ 16, dated May 10, 2007, Dkt. No. 80; Pls.' Br. 21 ("[A]s of March 6, 2007, 295 inmates were eligible for parole in 2006 and 62 were released, which meant the then current release rate was 21.1 %.").

facto enhancement" of the class members' sentences, and seek declaratory relief and a permanent injunction requiring Defendants to make parole determinations "in accordance with the mandates of, and solely for the purposes underlying, N.Y.S. Executive Law § 259-i." *Id.* ¶¶ 2, 19-21.

We review a judgment under Federal Rule of Civil Procedure 12(c) *de novo*, accepting the complaint's factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

We turn first to Plaintiffs' due process claim. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme." *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001) (per curiam). We have squarely held that because the New York parole scheme is not one that creates a legitimate expectancy of release, "[prisoners] have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable." *Id.* at 171; *see also id.* ("Neither the mere possibility of release, nor a statistical probability of release, gives rise to a legitimate expectancy of release on parole." (citations omitted)).

Plaintiffs nonetheless argue that they "have a limited liberty interest in 'not being denied parole for arbitrary or impermissible reasons,'" Pls.' Br. 32 (quoting *Boddie v. N.Y. State Div. of*

*Parole*, 285 F. Supp. 2d 421, 428 (S.D.N.Y. 2003)), and that a policy of denying parole to nearly all violent offenders constitutes "'flagrant or unauthorized'" action in violation of their minimal due process rights, Pls.' Br. 41 (quoting *Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991)).  As we have previously explained in prior cases involving substantively identical allegations, however, the claims Plaintiffs assert in this action are insufficient to trigger any such "limited liberty interest."  For example, in *McAllister v. New York State Division of Parole*, 432 F. App'x 32 (2d Cir. 2011) (summary order), we affirmed the dismissal of allegations that a prisoner was denied parole pursuant to an "unofficial policy" to deny parole to violent felony offenders solely on the basis of the violent nature of their convictions.  Similarly, in *Mathie v. Dennison*, 381 F. App'x 26 (2d Cir. 2010) (summary order), we affirmed the dismissal of a claim, almost identical to the one presented here, that New York State implemented an "unofficial policy" to deny parole to violent felony offenders solely on the basis of the violent nature of their convictions and without proper consideration of all the statutory criteria.  There, we relied on the district court's "thorough and well-reasoned order," which concluded that a policy that requires the Board to look first and foremost at the severity of the crime when making its parole determination is neither arbitrary nor capricious and that a plaintiff cannot state a federal due process claim for alleged violations of state law.  *Id.* (citing *Mathie v. Dennison*, No. 06 Civ. 3184 (GEL), 2007 U.S. Dist. LEXIS 60422 (S.D.N.Y. Aug. 16, 2007)).

Plaintiffs' allegations are insufficient for at least two reasons.  First, Plaintiffs do not allege that the State's unofficial policy requires the Board to look outside the statutory factors in making its parole determination; instead, they merely argue that the Board has *overvalued* the severity of the crime at the expense of other statutory considerations.  However, Plaintiffs'

-6-

minimal due process rights are "limited to not being denied parole for arbitrary or impermissible reasons." *Boddie*, 285 F. Supp. 2d at 428.[2] A policy of according substantial weight to the severity of the crime is neither arbitrary nor capricious; indeed, the Board is *required* to consider this factor as part of its determination, and it is entitled to give whatever weight it deems appropriate to each of statutory factors. *Mathie*, 2007 U.S. Dist. LEXIS 60422, at *18; *see also Robles v. Dennison*, 449 F. App'x 51 (2d Cir. 2011) (summary order) ("[T]he Parole Board is authorized to take a punitive or retributive factor into consideration, by asking whether the nature of the prisoner's crime *ever* makes release from incarceration to parole appropriate.") (internal quotation marks and alterations omitted); *Romer v. Travis*, No. 03 Civ. 1670, 2003 U.S. Dist. LEXIS 12917, at *20 (S.D.N.Y. July 29, 2003) ("The Parole Board may give whatever weight it deems appropriate to the statutory factors, and is entitled to determine that the nature of the crime outweighed the positive aspects of petitioner's record.") (internal quotation marks and alterations omitted). "The Due Process Clause is not violated by the Board's balancing of the statutory criteria, which is the Board's primary responsibility and is not properly second-guessed by this Court." *Mathie*, 2007 U.S. Dist. LEXIS 60422, at *19. Rather, to state a claim for violation of their minimal due process rights, Plaintiffs must allege that they were denied parole based on an "inappropriate consideration of a protected classification or an irrational distinction." *Morel v. Thomas*, No. 02 Civ. 9622, 2003 U.S. Dist. LEXIS 10935, at *13 (S.D.N.Y. June 26, 2003).[3] Plaintiffs' complaint contains no such allegations.

---

[2] *See also Rodriguez v. Greenfield*, 7 F. App'x 42 (2d Cir. 2001) (considering a case in which the Board rendered its decision based on a prison record that was missing sixteen years of documentation and a presentence investigation report and suggesting, but not deciding, that a parole system may become constitutionally offensive if administered maliciously or in bad faith).

[3] *See also Harris v. Travis*, No. 04-CV-911A(F), 2007 U.S. Dist. LEXIS 33457, at *11 (W.D.N.Y. May 7, 2007) ("[A] parole board's denial of parole resulting from political pressure to get tough on violent felony offenders, is based on a permissible consideration and does not violate a prisoner's federal equal protection rights, absent any claim that the denial was based on race, religion, or intent to punish or inhibit the exercise of constitutional rights, or malicious or

Second, even if New York State implemented an official policy denying parole to all violent offenders, such a policy would not violate the Due Process Clause even if the policy were adopted or implemented in violation of state law.  As Judge Lynch explained in *Mathie*:

> Plaintiffs conflates a potential state law claim with a non-existent constitutional claim. Plaintiff may be correct that a blanket policy denying parole to all violent felons violates existing state law; however, constitutional and state law claims are not inherently coextensive. . . .  The argument that a disregard of governing state law inherently renders a parole decision arbitrary or procedurally flawed proves too much.  If such an argument were accepted, every state law requirement would ipso facto be incorporated into federal constitutional law.

*Mathie*, 2007 U.S. Dist. LEXIS 60422, at *21-22.  Thus, while Plaintiffs may be able to state a valid claim in New York State courts under New York State law, Plaintiffs have failed to state a claim under the Due Process Clause of the United States Constitution.

Despite this clear circuit precedent, the dissent asserts that Plaintiffs have stated a substantive due process claim by alleging that they have been denied parole for arbitrary and impermissible reasons.  But the Supreme Court has made clear that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)). A blanket policy denying parole to violent felony offenders simply does not constitute egregious official conduct. If a blanket policy denying parole to violent-felony offenders does not, on its own, constitute a constitutional violation, the dissent is left to argue that the policy violates substantive due process because it runs afoul of state law.  That view ignores the Supreme Court's repeated admonitions to exercise "judicial self-restraint" and "the utmost care" when

---

bad faith intent to injure a person.") (internal quotation marks omitted); *Seltzer v. Thomas*, No. 03 Civ.00931 (LTS) (FM), 2003 U.S. Dist. LEXIS 12912, at *11 (S.D.N.Y. July 28, 2003) ("Seltzer claims that his parole denial was the result of political pressure on the part of Governor Pataki, who has conducted an overt and covert campaign to eliminate parole for all so-called violent felony offenders. Assuming that this is true, it does not constitute an impermissible ground for the denial of parole." internal quotation marks omitted)).

addressing a substantive due process claim, *Harker Heights*, 503 U.S. at 125, and risks constitutionalizing every violation of state law. We decline to take such an unprecedented step.

We turn next to Plaintiffs' claim that the Board's alleged "unofficial policy" to deny parole to violent felony offenders violates the Equal Protection Clause of the Fourteenth Amendment. "[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices," and "[i]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns*, 508 U.S. 307, 313 (1993). "Because prisoners either in the aggregate or specified by offense are not a suspect class, the [classification] will be upheld if [it is] rationally related to a legitimate state interest." *Lee v. Governor of N.Y.*, 87 F.3d 55, 60 (2d Cir. 1996). Here, the rational basis for a distinction in parole determinations between violent and nonviolent offenders is self-evident: preventing the early release of potentially violent inmates who may pose a greater danger to the safety of others. Plaintiffs have therefore failed to state an equal protection claim.

Finally, Plaintiffs' ex post facto argument is foreclosed by our decision in *Barna*, and must be rejected for that reason alone. *See Barna*, 239 F.3d at 171 ("The Ex Post Facto Clause does not apply to guidelines that do not create mandatory rules for release but are promulgated simply to guide the parole board in the exercise of its discretion."); *see also Mathie*, 2007 U.S. Dist. LEXIS 60422 ("[A]ny changes to parole guidelines do not constitute 'laws within the meaning of the' Ex Post Facto Clause.") (quoting *Barna*, 239 F.3d at 171).

We have considered Plaintiffs' remaining arguments and find them to be without merit. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

Stefan R. Underhill, *District Judge*, dissenting in part:

The allegations in this case are staggering: According to plaintiffs, the former Governor of New York and the head of the State Parole Commission conspired to convert hundreds of indeterminate sentences into determinate sentences of life in prison without the possibility of parole. The complaint alleges that the defendants adopted an unwritten policy to deny parole to all prisoners convicted of class A-1 felonies, no matter their record of rehabilitation or fitness for release. They did so to advance their own "political and economic agenda." First Amended Compl. ¶ 2. Their purported scheme circumvented the commands of both legislators and judges; the legislature instructed the Parole Board to consider eight factors when determining whether offenders are ready to rejoin their communities and judges imposed open-ended sentences believing that the Parole Board would do so. But the Governor's purported policy flouted these directives. It allegedly turned parole hearings into sham proceedings – inmates could present evidence and call witnesses, but they would waste their breath because the policy tied the commissioners' hands. As a result, the Governor and the Parole Board consigned hundreds of people to life in prison.

At least, that is what the complaint requires us to assume.[1] But the majority downplays these factual allegations in the complaint and reframes the plaintiffs' legal claim for relief. Because, when viewed in the proper light, the complaint states a plausible claim for a violation of substantive due process, I respectfully dissent.

---

[1] Attached to the complaint are statistics showing that violent felons were granted parole at a rate of 28% in 1993-94, 14% in 1995-96, and no more than 4% in 2000-01, 2001-02 and 2002-03. Those numbers, which we must assume to be accurate, support the plausible existence of the claimed unofficial policy.

1

The heart of plaintiffs' claim is that "[s]ince 1995 the Board of Parole has been issuing parole determinations pursuant to an unofficial policy of denying parole release to prisoners convicted of A-1 violent felony offenses solely on the basis of the violent nature of such offenses and thus without proper consideration to any other relevant or statutorily mandated factor." First Amended Compl. ¶ 31. Plaintiffs allege that the unofficial policy "precludes and/or substantially curtails the Parole Board's full and meaningful consideration of the . . . statutorily mandated factors," and results in "parole decisions for prisoners serving sentences for A-1 violent felonies [based] upon impermissible political and economic factors." *Id.* ¶ 34. Somehow the majority reads these allegations as asserting no more than that "the Board has *overvalued* the severity of the crime at the expense of other statutory considerations," Majority Op. at 7 (emphasis in original), and thus as no more than a complaint about the manner in which the Parole Board has exercised its discretion.

If the plaintiffs' claimed only that the Parole Board placed too much emphasis on one of the statutory factors when making parole decisions or otherwise violated state law, their claim would be meritless. But the plaintiffs do not claim that the Parole Board merely placed heavy weight on one factor while also considering all of the required factors. Instead, plaintiffs claim that the Parole Board based release decisions "*solely* on the basis of the violent nature of such offenses and thus *without proper consideration to any other relevant or statutorily mandated factor*." First Amended Compl. at ¶ 31 (emphasis supplied). When combined with the allegation that the alleged policy sought to further a political and economic agenda, plaintiffs state a claim that they have been denied parole for arbitrary and impermissible reasons, a cause of action implicitly

2

recognized by this Court. *Mathie v. Dennison*, No. 06 Civ. 3184, 2007 U.S. Dist. LEXIS 60422 at *15 (S.D.N.Y. Aug. 16, 2007), *aff'd*, 381 Fed. App'x 26 (2d Cir. 2010); *Rodriguez v. Greenfield*, 7 Fed. App'x 42, 44-45 (2d Cir. 2001) ("Our decision[s] [do] not answer the question raised in this case because in considering Rodriguez's 1998 parole denial, the Parole Board never considered a number of these factors … as it was mandated to consider by state law."). In the present procedural posture, this Court has no basis to hold that the Parole Board decisions over the pertinent period of time were not arbitrary and impermissible.[2]

The majority suggests that the allegations of the amended complaint fail to state a claim for a violation of substantive due process. I believe such a claim has been stated, and I am aware of no decision of this Court that precludes such a claim as a matter of law. The Due Process Clause's substantive dimension "bar[s] certain government actions regardless of the fairness used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It prevents officials from "abusing [their] power, or employing it as an instrument of oppression." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quoting *Deshaney v. Winnebago Cnty. Dept. of Social Servs.*, 489 U.S. 189 (1989)).

When a member of the executive branch is charged with violating substantive due process, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8. The standard is admittedly "open-ended"; both the Supreme Court and this Court have called for "judicial self-restraint" whenever a court confronts a substantive due process claim. *Collins v. City of Harker Heights*, 503

---

[2] The record does include evidence supportive of plaintiffs' claims, but the procedural posture of the case prevents me from relying on it.

U.S. 115, 125 (1992); *Local 342, Long Island Pub. Serv. Emp. v. Town Bd. of Huntington*, 31 F.3d 1191, 1196 (2d Cir. 1994). Courts, then, engage in a fact-intensive analysis attuned to "the state of mind of the government actor and the context in which the action was taken." *O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005).

Here, several aspects of the defendants' purported scheme remove it from the boundaries of decency and render it more than just an unfortunate policy choice. First, the defendants allegedly acted with the specific intent of depriving prisoners of their opportunity to win release. As *Lewis* made clear, only deliberate decisions to cause harm fall clearly within the scope of the Due Process Clause's protection. In the words of the Court, "[c]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to give rise to the conscience-shocking level." *Lewis*, 523 U.S. at 848.

Second, executive officials have no justifiable interest in circumventing mandated hearings or ignoring statutory criteria. In a similar context, this Court has held that an official loses legitimacy when he acts without regard for accepted standards of practice. In *Bolmer v. Oliveira*, 594 F.3d 134 (2d Cir. 2010), a doctor involuntarily committed a person to a psychiatric facility without completing a required exam. The Court held that a physician's decision to depart from customary procedures and criteria could shock the conscience because, in part, "a substantial departure from those standards . . . removes any 'reasonable justification' for intentionally depriving the person of his or her liberty." *Id.* at 142. Here, defendants' alleged policy in effect resentenced hundreds of offenders to life in prison without the possibility of parole and without consideration of an individual's record according to statutorily-mandated factors.

Third, this is not a case in which an executive official acted within his discretion to solve a difficult policy problem. New York Executive Law § 259(i) allows the Parole Board to weigh factors militating for and against parole as it sees fit. But the Parole Board must weigh all statutory factors. *See King v. New York State Div. Parole*, 632 N.E. 2d 1277 (N.Y. 1994). The criteria prescribed in New York Executive Law § 259(i), if applied properly, are designed to separate offenders who pose a risk to their communities from offenders who have developed the strength of character to return home without falling back into a life of crime. Thus, this is not a statute that contains conflicting commands requiring an executive to quickly fill gaps in order to ensure that an administrative regime functions smoothly. *See, e.g.*, *Lombardi v. Whitman*, 485 F.3d 73, 85 (2d Cir. 2007) (reasoning that conduct did not shock the conscience because officials merely "allocate[ed] . . . risk" when faced with an emergency).

Last, and, most important, the Governor's alleged scheme would offend one of the most fundamental principles in our legal system—that the executive cannot confine a person without lawful authority. As the Supreme Court has noted, the Framers constructed the Constitution to "guard against the abuse of monarchial power," and for that reason they cabined the executive's ability to "imprison . . . contrary to the law of the land." *Boumedienne v. Bush*, 553 U.S. 723, 740 (2008). That concern animates many of the bedrock provisions of our Constitution, including the Suspension Clause, the Sixth Amendment Right to Counsel, and the Right to a Trial by Jury. *See* U.S. CONST. art. I, § 9, cl. 2; U.S. CONST. amend. VI. Although those provisions do not apply in this case, their existence and purpose should inform any analysis of the Due Process Clause's scope; in a related context, the Supreme Court has reasoned that the Clause's breadth

5

depends upon "our Nation's history, legal traditions, and practices." *Washington v. Glucksberg*, 521 U.S. 702, 710 (1997) (outlining method for identifying a fundamental right protected by substantive due process). I can imagine no deeper tradition than our nation's longstanding commitment to ensuring that the government cannot condemn a man to life behind bars without notice or cause.[3] *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678 (2001) (holding that indefinite detention of deportable aliens violates substantive due process); *Foucha v. Louisiana*, 504 U.S. 71 (1992) (holding that substantive due process bars state from detaining a person acquitted by reason of insanity after he has been treated and judged competent). Yet, that is exactly what the Governor's alleged policy would do: People sentenced to prison but guaranteed the opportunity to petition for their freedom—some in reliance on explicit plea deals— would find themselves facing life sentences without any hope of release.

The majority asserts that a blanket policy to deny parole to all violent offenders without consideration of the required statutory factors is not arbitrary in the constitutional sense and that my contrary view relies only on a violation of state law. I believe that criticism is misplaced. In my view, the egregiousness – and the constitutional dimension -- of the conduct does not disappear merely because that conduct was undertaken by the

---

[3] I express no view regarding the adequacy of New York's parole hearings. *Greenholtz v. Nebraska* famously held that a prisoner has no liberty interest in parole. 442 U.S. 1 (1979). Although I am skeptical of that decision's logic—the Court reasoned that a "statutory expectation" in freedom is somehow qualitatively different than an interest in it—I need not revisit that question today. The question here is not whether the prescribed procedures governing parole decisions are adequate to protect a cognizable entitlement. Rather, the question is whether a particular method of executive enforcement that results in a dramatic loss to a class of citizens violates the Constitution's guarantee of substantive due process. To answer that question, courts look to traditions that undergird the Constitution, and take those purposes into account when interpreting ambiguous provisions.

executive rather than by the legislature. Although the plaintiffs' ex post facto claim fails because the alleged policy is "not [a] 'law[]' within the meaning of the ex post facto clause," *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001), the alleged policy is plainly unconstitutional. There can be no doubt that the New York legislature could not constitutionally pass a statute retroactively converting all indeterminate sentences for violent felons into determinate sentences of life without the possibility of parole. *Weaver v. Graham*, 450 U.S. 24, 30-31 (1981) ("[E]ven if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the [Ex Post Facto] Clause if it is both retrospective and more onerous than the law in effect on the date of the offense."). Nonetheless, the majority holds that the executive can accomplish the same result for arbitrary reasons without engaging in egregious conduct violative of substantive due process.

No one can deny that plaintiffs in this case have committed despicable crimes. But according to New York state law they may rehabilitate themselves sufficiently to merit release. The defendants have an obligation to follow the statutory process that affords offenders an opportunity to show that they have changed. Thus, if plaintiffs' claims are true, the defendants conspired to ignore statutory commands so that they could accomplish by unofficial policy what they could not constitutionally accomplish legislatively: the transformation of hundreds of indeterminate sentences into sentences of life imprisonment without the possibility of parole.[4] Such an intentional abuse of power shocks the conscience.

---

[4] Such a consequence is especially troubling in cases where a defendant traded his right to trial for a lighter sentence that included the opportunity for parole. Cf. *INS v. St. Cyr*, 533 U.S. 289, 321-23 (2001) (holding that an immigration law could not be interpreted to apply retroactively if it would unsettle or frustrate defendants' reasonable expectations at the time they pled guilty).

Conspiracy theories, of course, are incredibly difficult to prove, and rightly so. I have little doubt that plaintiffs would have found it quite difficult to present evidence from which a jury would infer that the Governor and the Chair of the Parole Board made a backroom deal designed to thumb their noses at the other branches of government and unlawfully condemn an entire class of offenders to life in prison. But we are not sitting as a jury or even reviewing a ruling granting summary judgment. We are reviewing a ruling on a motion for judgment on the pleadings, and must accept all well-pleaded allegations of the complaint as true. Under that required standard, plaintiffs' amended complaint states a substantive due process claim upon which relief can be granted.

Accordingly, I respectfully dissent from the implicit holding that the amended complaint fails to state a substantive due process claim.