[668 NYS2d 823]

In the Matter of HOLMES ORTIZ, Petitioner, v NEW YORK STATE
BOARD OF PAROLE, Respondent.

Fourth Department, February 4, 1998

APPEARANCES OF COUNSEL

*Gary B. Friedman,* New York City, for petitioner.

*Erin Peradotto,* Buffalo *(Martin Hotvet* of counsel), for respondent.

OPINION OF THE COURT

BOEHM, J.

In 1992, petitioner was convicted of four counts of criminal possession of a controlled substance in the first degree, criminal possession of a controlled substance in the third degree and conspiracy in the second degree. Petitioner was sentenced to an aggregate term of incarceration of $88^1/_3$ years to life imprisonment. The Presentence Investigation Report (PSI) of petitioner revealed that he was the direct link to the Cali cartel, a drug cartel headquartered in Colombia. According to the PSI, petitioner was in charge of the cartel operations in the "New York metropolitan area", where he supervised "groups of individuals whose job it was to safeguard and distribute thousands of kilograms of cocaine from the Cali based cartel to [that] area. Police became aware of petitioner in the Spring of 1989 and believed that he was involved with the transfer of tens of millions of dollars."

In 1995, petitioner's parole officer identified petitioner as a candidate, under Executive Law § 259-i (2) (d) (i), for conditional parole for deportation only (CPDO). That year, in the Sentencing Reform Act of 1995, the Legislature amended Executive Law § 259-i (2) (d) to provide that, where there is a final order of deportation issued against one serving a prison sentence who has not been convicted of a non-drug-related A-I felony or violent felony, he or she may be paroled conditionally to the United States Immigration and Naturalization Service for deportation (L 1995, ch 3, § 40). Executive Law § 259-i (2) (d) (i), as amended, further provides that eligibility for deportation is only one of the factors to be considered for early release. The other factors in Executive Law § 259-i (2) (c) that are required to be considered by respondent are that there be "a reasonable

probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law."

After a hearing, respondent granted petitioner early release as a CPDO. Shortly thereafter, however, Walter Comiskey, the Deputy Attorney-General of the Organized Crime Task Force who had prosecuted petitioner, informed respondent in a letter that it had come to his attention that petitioner had been granted CPDO. Comiskey objected to granting early release because, given petitioner's position in the cartel, "an enormously sophisticated and violent international criminal syndicate headquartered in Cali, Colombia, it is our view that [his] return * * * to Colombia would represent a tremendous miscarriage of justice". Comiskey stated that part of the conspiracy for which petitioner was convicted involved the possession of weapons and that it was petitioner's role to direct the operation of the conspiracy; that violence was an integral aspect of the cartel; that the police had recovered a loaded handgun from an individual who had just received 415 kilograms of cocaine from petitioner and that two more handguns were later found at that individual's residence; that an informant, a member of the conspiracy who had testified for the prosecution at petitioner's trial, described to the police "how violence and the threat of violence was business as usual for the Cartel, and in particular how violence was used by the Cartel hierarchy to ensure that its employees do not cooperate with the authorities"; and that the informant told Comiskey that he feared petitioner and that members of his family in Colombia had been threatened because he had agreed to testify against petitioner.

Based upon the Comiskey letter, respondent temporarily suspended petitioner's early release date and held a rescission hearing. At the hearing, Comiskey testified that the Cali cartel operated under a "specter of violence" and although "there is no specific evidence connecting [petitioner] to a specific act of violence * * * he bore responsibility for the entire course of events for the conspiracy of which he was a part". Comiskey further testified that the informant had been ordered to "keep his mouth shut and that the consequences [of harm to himself and his family in Colombia] were made plain to him. The informant was deathly afraid of [petitioner] and afraid of the business he was a part of". After the hearing, respondent

rescinded the release of petitioner. Respondent determined that the letter written by Comiskey and his testimony at the hearing was "significant information which existed prior to the rendition of the parole release decision [and that] such information was not known by the board" at the time of the first hearing. Respondent found significant the information furnished by Comiskey regarding the seizure of handguns; that the informant feared petitioner; and that violence and the threat of violence were business as usual for the Cali cartel.

Petitioner appealed to respondent from the determination of rescission, contending that the evidence regarding the violent nature of the business of the Cali cartel and the people associated with it was known by respondent at the initial hearing and that the information with respect to the informant's fear of petitioner and the possession of handguns by cartel members is not such "significant information" as to justify rescission (9 NYCRR 8002.5 [b] [2] [i]).

A parole board may "[i]n its discretion * * * revoke or modify any of its decisions or determinations" (9 NYCRR 8000.4). Rescission of parole release is authorized, *inter alia*, where there is "significant information which existed * * * prior to the rendition of the parole release decision, where such information was not known by [respondent]" (9 NYCRR 8002.5 [b] [2] [i]). Further, a parole board must be "satisfied that substantial evidence was presented at the hearing to form a basis for rescinding the grant of release" (9 NYCRR 8002.5 [d] [1]).

Although petitioner met the statutory criteria for CPDO eligibility, such eligibility, as noted, is only one factor to be considered in granting parole under Executive Law § 259-i (2) (d). The Sentencing Reform Act of 1995 (L 1995, ch 3, § 40) made petitioner eligible for parole release, but it did not entitle him to such release, or preclude consideration of the usual factors in the Executive Law relevant to that decision (*see,* Executive Law § 259-i [2] [c]). In deciding whether to rescind its parole determination, a parole board will consider those factors and the new information presented to it, provided the new information is "significant". The determination to rescind parole is made on the basis that petitioner was not entitled to parole in the first instance. The purpose of a rescission hearing is to correct a mistake in the initial determination to grant parole before an inmate is released. "Rescission of parole is to be distinguished from parole revocation, the latter arising out of a violation of parole conditions by the parolee after having been

properly granted parole, while the former terminates a parolee's release to which he was never rightfully entitled" (*Matter of De Zimm v New York State Bd. of Parole*, 135 AD2d 66, 67, n 2; *see, Matter of Tremarco v New York State Bd. of Parole*, 87 AD2d 114, 118-119, *appeal dismissed* 58 NY2d 968).

We agree with petitioner that the information in the Comiskey letter and the testimony of Comiskey at the rescission hearing with respect to the possession of handguns and the violence of the Cali cartel does not constitute significant information that was not previously known to respondent. The information in the PSI of petitioner clearly put respondent on notice of the violent nature of petitioner's employer. Further, the statements and testimony of Comiskey regarding the seizure of firearms, while technically new information, was not significant. Again, respondent must have been aware at the initial hearing that petitioner was in an enterprise that involved possession of illegal firearms. Further, there was no evidence directly linking petitioner to possession of a firearm.

However, the letter and testimony of Comiskey that the informant was "deathly afraid" of petitioner and that he had received threats that his safety and the safety of his family in Colombia would be compromised if he testified against petitioner constituted "significant information" not previously before respondent (9 NYCRR 8002.5 [b] [2] [i]). Although there was no direct evidence that petitioner threatened the informant and his family, respondent could credit the testimony of Comiskey that the informant was "deathly afraid" of petitioner and infer that this fear was attributable to the threats against him and his family. It was therefore not unreasonable for respondent to conclude that the determination to release petitioner early as a CPDO would result in harm to the informant and his family. The conclusion of respondent that this new information was "significant" constituted substantial evidence to support its determination to rescind petitioner's early release (9 NYCRR 8002.5 [b] [2] [i]; *see,* Executive Law § 259-i [2] [c]; *300 Gramatan Ave. Assocs. v State Div. of Human Rights*, 45 NY2d 176, 180-181).

We reject the contention of petitioner that rescission of his parole violated his due process rights. Although there appears to be no New York case law directly on point regarding rescission of a parole determination, the cases involving revocation of parole are instructive. The Court of Appeals has held that there is no constitutional right to parole, but when a State adopts a sentencing scheme that creates a legitimate expecta-

tion of early release from prison, "there then exists a liberty interest deserving of constitutional protection" (*Matter of Russo v New York State Bd. of Parole*, 50 NY2d 69, 74). The Second Circuit Court of Appeals has also held that a Federal prisoner who has been granted early parole release but who has not yet been released has a protected liberty interest (*see, Green v McCall*, 822 F2d 284, 290-293 [2d Cir 1987]). Therefore, after respondent's original determination, petitioner possessed a liberty interest in his parole release. Nevertheless, the rescission of parole did not violate the due process rights of petitioner. Petitioner was represented by counsel and the procedures provided in the parole rescission proceedings were constitutionally sufficient (*see, Green v McCall, supra*; 9 NYCRR 8002.5 [b] [5]).

We have considered the remaining contention of petitioner and conclude that it is without merit. Accordingly, the determination of respondent should be confirmed and the petition dismissed.

PINE, J. P., LAWTON, HAYES and WISNER, JJ., concur.

Determination unanimously confirmed, without costs, and petition dismissed.