UNDERHILL, District Judge, filed a separate opinion dissenting.
PER CURIAM:
Plaintiffs-Appellants Peter Graziano, James Buckley, Mark Malone, Robert A. Harris, William Walker, Aaron Talley, Maurice Murrell, Steven Ho, and Brian Jacques (collectively, “Plaintiffs”) filed this class action against Defendants-Appellees George Pataki, the Governor of the State of New York; Robert Dennison, the Chairman of the New York State Division of Parole; and the New York State Division of Parole (collectively, “Defendants”) on behalf of themselves and all other New York State prisoners convicted of violent felony offenses. Plaintiffs allege that they have been denied parole as a result of an “unwritten policy” to deny parole to violent felony offenders, and that this unofficial policy violates three provisions of the federal constitution: (1) the Due Process Clause of the Fourteenth Amendment; (2) the Equal Protection Clause of the Fourteenth Amendment; and (3) the Ex Post Facto Clause. Because we conclude that Plaintiffs have failed to state a claim for violation of their rights under any of these provisions, we affirm the December 10, *113 2010 judgment of the United States District Court for the Southern District of New York granting Defendants’ motion to dismiss Plaintiffs’ complaint pursuant to Rule 12(c) of the Federal Rule of Civil Procedure.
New York’s parole system is administered by the Board of Parole (the “Board”). See New York State Executive Law §§ 259, 259-b. The Board’s authority to grant parole release is governed by Executive Law § 259 — i, which provides, in relevant part:
Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law. In making the parole release decision, the procedures adopted pursuant to subdivision four of section two hundred fifty-nine-e of this article shall require that the following be considered: (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interactions with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) any deportation order issued by the federal government against the inmate while in the custody of the department and any recommendation regarding deportation made by the commissioner of the department pursuant to section one hundred forty-seven of the correction law; (v) any statement made to the board by the crime victim or the victim’s representative, where the crime victim is deceased or is mentally or physically incapacitated; (vi) the length of the determinate sentence to which the inmate would be subject had he or she received a sentence pursuant to section 70.70 or section 70.71 of the penal law for a felony defined in article two hundred twenty or article two hundred twenty-one of the penal law; (vii) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the presentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest prior to confinement; and (viii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.
§ 259 — i(2)(c)(A) (emphasis added). “While consideration of these guidelines is mandatory, the ultimate decision to parole a prisoner is discretionary.” Silmon v. Travis, 95 N.Y.2d 470, 477, 718 N.Y.S.2d 704, 741 N.E.2d 501 (2000). In addition, although the Board “must provide the inmate with a proper hearing in which only the relevant guidelines are considered,” it “need not expressly discuss each of these guidelines in its determination.” King v. N.Y. State Div. of Parole, 83 N.Y.2d 788, 791, 610 N.Y.S.2d 954, 632 N.E.2d 1277 (1994). An inmate who objects to a parole denial may file an administrative appeal with the Board’s Appeals Unit, see Executive Law § 259 — i(4)(a); 9 N.Y.C.R.R. §§ 8006.1(a), 8006.4(a), and an inmate may challenge the *114 Appeals Unit’s decision in New York state court by filing a petition under Article 78 of New York’s Civil Practice Law and Rules, see, e.g., Garcia v. N.Y. State Div. of Parole, 239 A.D.2d 235, 657 N.Y.S.2d 415 (1997).
The named plaintiffs represent a class of prisoners who (1) were convicted of A-l violent felony offenses, such as murder; (2) have served the minimum terms of their indeterminate sentences and are therefore eligible for parole release; and (3) have had their most recent applications for parole release ■ denied by the Board because of the seriousness of the underlying offense. See Graziano v. Pataki, No. 06 Civ. 480(CLB), 2007 WL 4302483, at *1-2, 2007 U.S. Dist. LEXIS 89737, at *5 (S.D.N.Y. Dec. 5, 2007). Their complaint alleges that defendant George Pataki, who was Governor of New York from 1995 to 2006, adopted an unwritten policy to deny parole to violent felony offenders solely because of the violent nature of their offenses and “without any meaningful consideration or balancing of any other relevant or statutorily mandated factors.” First Amended Compl. ¶ 21. This “unofficial policy” assertedly led to a drop in the release rates for violent offenders, from a high of 28% in 1993-94 to a low of 3% in 2000-01.[1] See First Amended Compl. & Attach; see also Pis.’ Br. 11. Plaintiffs maintain that this' alleged policy constitutes “a violation of due process and equal protection and is an unconstitutional ex post facto enhancement” of the class members’ sentences, and seek declaratory relief and a permanent injunction requiring Defendants to make parole determinations “in accordance with the mandates of, and solely for the purposes underlying, N.Y.S. Executive Law § 259 — i.” Id. ¶¶2, 19-21.
We review a judgment under Federal Rule of Civil Procedure 12(c) de novo, accepting the complaint’s factual allegations as true and drawing all reasonable inferences in the plaintiffs favor. See Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir.2010). To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to “state a claim to relief that is plausible on its face.” Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
We turn first to Plaintiffs’ due process claim. “The Fourteenth Amendment’s Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake.” Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). “In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state’s statutory scheme.” Barna v. Travis, 239 F.3d 169, 170 (2d Cir.2001) (per curiam). We have squarely held that because the New York parole scheme is not one that creates a legitimate expectancy of release, “[prisoners] have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable.” Id. at 171; see also id. (“Neither the mere possibility of release, nor a statistical probability of release, gives rise to a legiti *115 mate expectancy of release on parole.” (citations omitted)).
Plaintiffs nonetheless argue that they “have a limited liberty interest in ‘not being denied parole for arbitrary or impermissible reasons,”’ Pis.’ Br. 32 (quoting Boddie v. N.Y. State Div. of Parole, 285 F.Supp.2d 421, 428 (S.D.N.Y.2003)), and that a policy of denying parole to nearly all violent offenders constitutes “ ‘flagrant or unauthorized’ ” action in violation of their minimal due process rights, Pis.’ Br. 41 (quoting Monroe v. Thigpen, 932 F.2d 1437, 1441 (11th Cir.1991)). As we have previously explained in prior cases involving substantively identical allegations, however, the claims Plaintiffs assert in this action are insufficient to trigger any such “limited liberty interest.” For example, in McAllister v. New York State Division of Parole, 432 Fed.Appx. 32 (2d Cir.2011) (summary order), we affirmed the dismissal of allegations that a prisoner was denied parole pursuant to an “unofficial policy” to deny parole to violent felony offenders solely on the basis of the violent nature of their convictions. Similarly, in Mathie v. Dennison, 381 Fed.Appx. 26 (2d Cir.2010) (summary order), we affirmed the dismissal of a claim, almost identical to the one presented here, that New York State implemented an “unofficial policy” to deny parole to violent felony offenders solely on the basis of the violent nature of their convictions and without proper consideration of all the statutory criteria. There, we relied on the district court’s “thorough and well-reasoned order,” which concluded that a policy that requires the Board to look first and foremost at the severity of the crime when making its parole determination is neither arbitrary nor capricious and that a plaintiff cannot state a federal due process claim for alleged violations of state law. Id. (citing Mathie v. Dennison, No. 06 Civ. 3184(GEL), 2007 WL 2351072, 2007 U.S. Dist. LEXIS 60422 (S.D.N.Y. Aug. 16, 2007)).
Plaintiffs’ allegations are insufficient for at least two reasons. First, Plaintiffs do not allege that the State’s unofficial policy requires the Board to look outside the statutory factors in making its parole determination; instead, they merely argue that the Board has overvalued the severity of the crime at the expense of other statutory considerations. However, Plaintiffs’ minimal due process rights are “limited to not being denied parole for arbitrary or impermissible reasons.” Boddie, 285 F.Supp.2d at 428.[2] A policy of according substantial weight to the severity of the crime is neither arbitrary nor capricious; indeed, the Board is required to consider this factor as part of its determination, and it is entitled to give whatever weight it deems appropriate to each of statutory factors. Mathie, 2007 WL 2351072, at *6, 2007 U.S. Dist. LEXIS 60422, at *18; see also Robles v. Dennison, 449 Fed.Appx. 51 (2d Cir.2011) (summary order) (“[T]he Parole Board is authorized to take a punitive or retributive factor into consideration, by asking whether the nature of the prisoner’s crime ever makes release from incarceration to parole appropriate.”) (internal quotation marks and alterations omitted); Romer v. Travis, No. 03 Civ. 1670, 2003 WL 21744079, at *6, 2003 U.S. Dist. LEXIS 12917, at *20 (S.D.N.Y. July 29, 2003) (“The Parole Board may give whatever weight it deems appropriate to the statutory factors, and is entitled to determine *116 that the nature of the crime outweighed the positive aspects of petitioner’s record.”) (internal quotation marks and alterations omitted). “The Due Process Clause is not violated by the Board’s balancing of the statutory criteria, which is the Board’s primary responsibility and is not properly second-guessed by this Court.” Mathie, 2007 WL 2351072, at *6, 2007 U.S. Dist. LEXIS 60422, at *19. Rather, to state a claim for violation of their minimal due process rights, Plaintiffs must allege that they were denied parole based on an “inappropriate consideration of a protected classification or an irrational distinction.” Morel v. Thomas, No. 02 Civ. 9622, 2003 WL 21488017, at *4, 2003 U.S. Dist. LEXIS 10935, at *13 (S.D.N.Y. June 26, 2003).[3] Plaintiffs’ complaint contains no such allegations.
Second, even if New York State implemented an official policy denying parole to all violent offenders, such a policy would not violate the Due Process Clause even if the policy were adopted or implemented in violation of state law. As Judge Lynch explained in Mathie:
Plaintiffs conflates a potential state law claim with a non-existent constitutional claim. Plaintiff may be correct that a blanket policy denying parole to all violent felons violates existing state law; however, constitutional and state law claims are not inherently coextensive .... The argument that a disregard of governing state law inherently renders a parole decision arbitrary or proeedurally flawed proves too much. If such an argument were accepted, every state law requirement would ipso facto be incorporated into federal constitutional law.
Mathie, 2007 WL 2351072, at *7-8, 2007 U.S. Dist. LEXIS 60422, at *21-22. Thus, while Plaintiffs may be able to state a valid claim in New York State courts under New York State law, Plaintiffs have failed to state a claim under the Due Process Clause of the United States Constitution.
Despite this clear circuit precedent, the dissent asserts that Plaintiffs have stated a substantive due process claim by alleging that they have been denied parole for arbitrary and impermissible reasons. But the Supreme Court has made clear that “only the most egregious official conduct can be said to be ‘arbitrary in the constitutional sense.’ ” Cty. of Sacramento v. Lewis, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quoting Collins v. Marker Heights, 503 U.S. 115, 129, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). A blanket policy denying parole to violent felony offenders simply does not constitute egregious official conduct. If a blanket policy denying parole to violent-felony offenders does not, on its own, constitute a constitutional violation, the dissent is left to argue that the policy violates substantive due process because it runs afoul of state law. That view *117 ignores the Supreme Court’s repeated admonitions to exercise “judicial self-restraint” and “the utmost care” when addressing a substantive due process claim, Harker Heights, 503 U.S. at 125, 112 S.Ct. 1061, and risks constitutionalizing every violation of state law. We decline to take such an unprecedented step.
We turn next to Plaintiffs’ claim that the Board’s alleged “unofficial policy” to deny parole to violent felony offenders violates the Equal Protection Clause of the Fourteenth Amendment. “[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices,” and “[i]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.” FCC v. Beach Commc’ns, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). “Because prisoners either in the aggregate or specified by offense are not a suspect class, the [classification] will be upheld if [it is] rationally related to a legitimate state interest.” Lee v. Governor of N.Y., 87 F.3d 55, 60 (2d Cir.1996). Here, the rational basis for a distinction in parole determinations between violent and nonviolent offenders is self-evident: preventing the early release of potentially violent inmates who may pose a greater danger to the safety of others. Plaintiffs have therefore failed to state an equal protection claim.
Finally, Plaintiffs’ ex post facto argument is foreclosed by our decision in Bama, and must be rejected for that reason alone. See Barna, 239 F.3d at 171 (“The Ex Post Facto Clause does not apply to guidelines that do not create mandatory rules for release but are promulgated simply to guide the parole board in the exercise of its discretion.”); see also Mathie, 2007 WL 2351072, 2007 U.S. Dist. LEXIS 60422 (“[A]ny changes to parole guidelines do not constitute ‘laws within the meaning of the’ Ex Post Facto Clause.”) (quoting Barna, 239 F.3d at 171).
We have considered Plaintiffs’ remaining arguments and find them to be without merit. For the reasons stated herein, the judgment of the district court is AFFIRMED.

. However, Plaintiffs acknowledged in the proceedings below, in their principal brief on appeal, and during oral argument that parole release rates for A-l violent felons have steadily risen from their low point in 2000-01; for example, release rates had increased to 6.5% by 2004 and to 21.1% by 2006. See, e.g., Decl. of Robert N. Isseks ¶ 16, dated May 10, 2007, Dkt. No. -80; Pis.' Br. 21 ("[A]s of March 6, 2007, 295 inmates were eligible for parole in 2006 and 62 were released, which *115 meant the then current release rate was 21.1%.").

. See also Rodriguez v. Greenfield, 7 Fed. Appx. 42 (2d Cir.2001) (considering a case in which the Board rendered its decision based on a prison record that was missing sixteen years of documentation and a presentence investigation report and suggesting, but not deciding, that a parole system may become constitutionally offensive if administered maliciously or in bad faith).

. See also Harris v. Travis, No. 04-CV-911A(F), 2007 WL 1362634, at *3, 2007 U.S. Dist. LEXIS 33457, at *11 (W.D.N.Y. May 7, 2007) (“[A] parole board's denial of parole resulting from political pressure to get tough on violent felony offenders, is based on a permissible consideration and does not violate a prisoner’s federal equal protection rights, absent any claim that the denial was based on race, religion, or intent to punish or inhibit the exercise of constitutional rights, or malicious or bad faith intent to injure a person.”) (internal quotation marks omitted); Seltzer v. Thomas, No. 03 Civ.00931 (LTS)(FM), 2003 WL 21744084, at *4, 2003 U.S. Dist. LEXIS 12912, at *11 (S.D.N.Y. July 28, 2003) (“Seltzer claims that his parole denial was the result of political pressure on the part of Governor Pataki, who has conducted an overt and covert campaign to eliminate parole for all so-called violent felony offenders. Assuming that this is true, it does not constitute an impermissible ground for the denial of parole.” internal quotation marks omitted).