14-3442-pr
Bottom v. Pataki

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of May, two thousand fifteen.

PRESENT:  RALPH K. WINTER,
            JOHN M. WALKER, JR.,
            CHRISTOPHER F. DRONEY,
                  *Circuit Judges.*

------------------------------------------------------------------------

ANTHONY BOTTOM,

               *Plaintiff-Appellant*,

        v.                                          No. 14-3442-pr

GEORGE E. PATAKI, Individually and in his official capacity as Governor of New York State, BRION D. TRAVIS, Individually and in his official capacity as the Chairman of New York State Division of Parole, GLENN S. GOORD, Individually and in his official capacity as the Commissioner of New York State Department of Correctional Services,

               *Defendants-Appellees*.

------------------------------------------------------------------------

FOR PLAINTIFF-APPELLANT:         MALIK HAVALIC (Hagit Elul, *on the brief*), Hughes Hubbard & Reed LLP, New York, NY.

FOR DEFENDANTS-APPELLEES:      MARTIN A. HOTVET, Assistant Solicitor General (Barbara D. Underwood,

Solicitor General, Andrew B. Ayers, Assistant Solicitor General, *on the brief*), *for* Eric. T. Schneiderman, Attorney General of the State of New York, New York, NY.

Appeal from an August 7, 2006 judgment of the United States District Court for the Northern District of New York (Scullin, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Anthony Bottom appeals from a judgment of the district court granting Defendants-Appellees' motion to dismiss Bottom's 42 U.S.C. § 1983 claims. Bottom alleged that Defendants George E. Pataki, Brion D. Travis, and Glenn S. Goord violated the Due Process and *Ex Post Facto* Clauses of the United States Constitution as a result of the New York State Board of Parole's ("the Board") decision to deny Bottom parole.[1] We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). *Pro se* complaints, such as the complaint filed by Bottom, "must be construed liberally and interpreted to raise

---

[1] Bottom's complaint alleged other constitutional violations that were also dismissed by the district court, which are not at issue on appeal.

the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted).

1.   Due Process Claim

Bottom's complaint, construed and interpreted liberally, alleged that his due process rights were violated when the Board denied him parole for two reasons: (1) the Board had predetermined his parole outcome through its policy of denying parole to violent felons, and therefore had failed to consider the statutory factors enumerated in New York's parole statute, Executive Law § 259-i; and (2) the Board's decision to deny Bottom parole was motivated by factors outside of those enumerated in § 259-i, in particular by a pecuniary interest in receiving federal funding through truth-in-sentencing incentive grants under 42 U.S.C. § 13704.

As an initial matter, "[t]he New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release," and prisoners in New York "have no liberty interest" in receiving parole. *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001) (per curiam). We have identified some "minimal due process rights" in parole proceedings, but those minimal rights are "limited to not being denied parole for [constitutionally] arbitrary or impermissible reasons," which requires a showing of "egregious official conduct." *Graziano v. Pataki*, 689 F.3d 110, 115, 116 (2d Cir. 2012) (internal quotation marks omitted).

Regarding Bottom's claim that the Board had a policy of denying parole to violent felons, we recently held in *Graziano* that "even if New York State implemented an official

3

policy denying parole to all violent offenders, such a policy would not violate the Due Process Clause even if the policy were adopted or implemented in violation of state law" because "[a] blanket policy denying parole to violent felony offenders simply does not constitute egregious official conduct." *Id*. at 116. Bottom argues that *Graziano* is distinguishable because he alleged the Board failed to consider the § 259-i factors other than seriousness of the offense in his parole hearing, but this allegation was similarly made by the plaintiffs in *Graziano*. *See id.* at 118 (Underhill, *J.*, dissenting) ("[P]laintiffs claim that the Parole Board based release decisions '*solely* on the basis of the violent nature of such offenses and thus *without proper consideration to any other relevant or statutorily mandated factor.*' First Amended Compl. at ¶ 31."). Consequently, although Bottom characterizes his parole decision as predetermined, the Board's alleged policy of denying parole to violent felons—even if such a policy might constitute a violation of New York state law—is, for purposes of federal constitutional law, a permissible exercise of the Board's discretion that "does not constitute egregious official conduct" and "does not, on its own, constitute a constitutional violation." *Id.* at 116.

Finally, New York's receipt of federal funding for implementing truth-in-sentencing laws, which require that violent felons serve eighty-five percent of their imposed sentences, *see* 42 U.S.C. § 13704(a)(1)(A), is not enough to transform the Board's otherwise permissible policy of denying parole to violent felons into a constitutionally impermissible policy. Bottom did not allege that the Board's members personally benefitted in any way from the funds, and Bottom does not argue that the Board's alleged

4

policy of considering only the severity of the crime was implemented differently in his parole hearings than was the policy we found to be permissible in *Graziano*. Any incentive of a Board official to deny parole that might result from New York's receipt of federal funding is "too remote and attenuated," *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996), to constitute "egregious official conduct" given Bottom's minimal due process rights in parole proceedings.[2] *See Graziano*, 689 F.3d at 116.

Accordingly, the district court properly dismissed Bottom's due process claim.

### 2. *Ex Post Facto* Claim

Bottom's complaint alleged that the Board's policy of denying parole to violent felons effectively converted his life sentence with the possibility of parole into a life sentence without the possibility of parole in violation of the *Ex Post Facto* Clause. However, the *Ex Post Facto* Clause "applies only to legislative action that retroactively punishes as a crime an act previously committed, which was innocent when done, makes more burdensome the punishment for a crime, after its commission, or deprives one charged with crime of any defense available according to law at the time when the act was committed." *Barna*, 239 F.3d at 171 (internal quotation marks omitted); *see Graziano*, 689 F.3d at 117. It does not apply to laws, like those in New York's statutory provisions concerning parole, that are "merely procedural and do[] not increase a prisoner's punishment." *Barna*, 239 F.3d at 171.

---

[2] Bottom's position also leads to the untenable conclusion that a violent felon categorically has a plausible constitutional claim each time he is denied parole based on parole boards' alleged interest in federal funding. Such a result would considerably expand the limited nature of the due process right at issue here.

5

Bottom's sole argument is that *Barna* and *Graziano* have been superseded by the Supreme Court's decision in *Peugh v. United States*, 133 S. Ct. 2072 (2013). We disagree. *Peugh* held that there "is an *ex post facto* violation when a defendant is sentenced under [U.S. Sentencing] Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense." *Id.* at 2078. *Peugh* recognized that procedural hurdles in a sentencing regime, which "in practice[] make the imposition" of a more lenient sentence less likely, can constitute an *ex post facto* violation. *Id.* at 2083-84. But this recognition is consistent with our holding in *Barna* that "[a] law that is merely procedural *and does not increase a prisoner's punishment* cannot violate the *Ex Post Facto* Clause." *Barna*, 239 F.3d at 171 (emphasis added). Here, none of the Board's alleged policy changes with respect to parole "increase [Bottom's] punishment" because "[t]he New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release" in the first place. *Id.* Although "the *Ex Post Facto* Clause does not merely protect reliance interests[,] [i]t also reflects principles of fundamental justice," the "principle of unfairness . . . is not a doctrine unto itself" that can "invalidat[e] laws under the *Ex Post Facto* Clause by its own force." *Peugh*, 133 S. Ct. at 2085 & n.6 (internal quotation marks omitted). Bottom's *ex post facto* claim was thus properly dismissed.

6

We have considered Bottom's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court